THOMAS J. DUDLEY *v.* THE GEAUGA IRON COMPANY.

1. Where objection was made to an item of credit in an account rendered by one party to another, and notice of the objection was given at the time of its rendition, or soon after, and the balance shown by the account so rendered was carried forward into subsequent accounts rendered, which were received and filed without objection, but without waiving or withdrawing the objection to the disputed item of credit; and the party rendering the accounts, afterward settled and paid the balance exhibited against him by his accounts so rendered, and obtained a receipt therefor, under an agreement that the said disputed item should remain open, and not be considered as acquiesced in by the other party. Held: That, as to the disputed item of credit, the accounts so rendered are not to be regarded as accounts stated.

2. A judgment will not be reversed on account of the admission of improper ov-

idence, unless the evidence so admitted is set out or its character is shown to be such as would tend to the prejudice of the party asking the reversal.

3. Where, in a petition framed under the 122d section of the code, a certain sum is stated to be due " on the account *for goods sold and delivered* by the plaintiff to the defendant, a copy of which is hereto attached," and the account contains items which are not for goods sold and delivered, but which are all proper subjects of account, and the defendant answers to the merits, without objection to the petition, it is not error to admit evidence on the trial in support of the items which are not for goods sold and delivered.

ERROR to the court of common pleas of Lake county. Reserved in the district court.

The case is sufficiently stated in the opinion of the court.

*William L. Perkins* and *Ranney, Backus* and *Noble,* for plaintiff in error.

*Reuben Hitchcock* and *Paine & Paine,* for defendants in error.

SCOTT, J.—The original action was brought by the defendant in error, as a company incorporated by the laws of this state, against the plaintiff in error, in the court of common pleas of Lake county, by petition filed June 7, 1855, and framed under the 122d section of the code, for the recovery of a balance claimed to be due on an account for goods sold and delivered. A copy of the account, exhibiting dates, items, credits, etc., was appended, the dates of the account extending from July 8, 1842, till March 20, 1851, and it consisted principally of charges for castings, etc., furnished from year to year, at specified dates, and sold by defendant below. The form of stating the items in the account was generally thus : " 1843, January 3. To castings sold since January 17, 1842, as follows." The last charge is " 1851, March 20. To 6,702 lbs. castings on hand March 25, '50, supposed to have been sold during the last current year—3¼—$217.81." Interest was charged on sales from the close of each year; and a judgment was asked on the whole account for $10,240, and interest from various dates.

The defendant, by answer, and sundry amendments thereto, set up the following defenses :

1. As to all, except the last charge of $217.81, account rendered and settled, balance found due plaintiff, May 22, 1850, of $841, and paid in full.   And

2. Denies the last charge of $217.81.

3. As to all except the last charge, same as the first, stating the manner in which the $841 was paid, to-wit.: by seven shares of stock in plaintiff's company, sold to plaintiff for $7000, and plaintiff's notes given for the balance.

4. Same as 3, but averring that the stock so sold was worth $1500 per share, which was known to the plaintiff, but not known to the defendant, and that to close the whole matter he consented to sell the same for $1000 per share.

5. As a fifth defense the defendant, by way of recital, states that he and one Jonathan Mayhew, being partners in business at Buffalo, New York, in 1837, under the firm name of Mayhew & Dudley, from and after that time had dealings with the plaintiff; bought castings, etc., of plaintiff; paid moneys and sold goods to plaintiff; and about the 1st of May, 1838, agreed with the plaintiff to become its agents and sell castings, etc., for the plaintiff, and account to the plaintiff for the net proceeds of sales after retaining commissions ; and on the 1st day of January, 1839, rendered an account to the plaintiff of sales, etc., and again accounted on the 1st January, 1840, when a balance was found due to the plaintiff of $6710.79 should the sales made on commission prove available.   That defendant and Mayhew dissolved their partnership in November, 1839, and one Sheldon Thompson took the place of Mayhew, with whom the defendant continued to do business under the firm name of Dudley & Thompson, and to receive and sell goods for the plaintiff as before, until about the 1st of February, 1842.   That an agreement was entered into between the plaintiff and said Dudley & Thompson by which said Dudley & Thompson were to continue to sell pig iron, castings, etc., for plaintiff, on commission, at certain specified rates, to-wit : twelve per cent. commission on castings and five dollars per tun on pig iron, and guarantee all their sales ;

and that, under this agreement, said Dudley & Thompson continued to sell goods, etc., for plaintiff, and rendered an account of sales on the 1st of March, 1841, and again on the 17th of January, 1842, in which last account, pursuant to agreement, they credited the plaintiff with the balance due from the former firm of Mayhew & Dudley of $6710.79, deducting therefrom the sum of $3422.00 for debts remaining uncollected and unavailable of the sales of 1838 and 1839, by which last account rendered there was found due to Dudley & Thompson a balance of $4191.10 ; that defendant and said Thompson dissolved partnership about the 17th of February, 1842, and said balance became the property of defendant. He then proceeds to answer directly, denying all indebtedness, and alleges that the goods claimed to have been sold were sent to him at Buffalo, from June, 1842, to March 20, 1848, and to T. J. Dudley & Co. (a firm composed of himself and one George B. Buell, from April 1, 1848, till March 25, 1850, to be sold on commission, and that he, and he and his partners annually rendered accounts stated, and sets up a final settlement and receipt. Copies of the several accounts rendered are attached to the answer.

No replication was filed, the code at that time requiring none.

By consent of parties, all the issues of law and fact in the case were referred to referees, who, after trial had before them, reported that they found a balance due to the plaintiff below, including interest till February 8, 1858, of $13,360.94. Sundry exceptions were taken to the report by the defendant below, and he moved the court to set aside the report and order a new trial, for various reasons ; and the plaintiff having, in open court, remitted from the amount found due by the referees the sum of $2980, on account of errors in the computation made by the referees, the defendant's exceptions to the report, and his motion for a new trial, were overruled, and judgment rendered for the plaintiff for $10,507.00, being the sum found due by the referees (less the amount remitted), and interest subsequently accruing.

From exceptions taken on the hearing before the referees it appears that the defendant claimed the right first to produce

his evidence upon all the issues except that in respect to the last charge of $217.81; but the referees decided and ruled that the plaintiff should go forward and first introduce all his proofs, on all the issues, and to prove his whole account. In this there was no error. Part of the plaintiff's account was directly denied by the answer, and the fifth defense can only be understood as controverting the whole of it. The copies of accounts attached to this defense and claimed to have been rendered from year to year, and settled between the parties, exhibit a very different state of accounts between the parties from that claimed by the plaintiff; and in such case the plaintiff was properly permitted first to offer evidence in support of its disputed claim. (Code, sec. 266.)

2. It is claimed, in the second place, that the referees erred in permitting the plaintiff below to offer in evidence a copy of the record of the proceedings of its stockholders and directors, upon proof of the loss of the original record, but without sufficient proof of the correctness of the copy. But the record does not disclose any part of the contents of the copy received in evidence, nor state even its general character or tendency. If we admit that the evidence was improperly received, still error is not shown to have intervened to the prejudice of the plaintiff in error, and the judgment will not, therefore, be reversed. *Scovern* v. *The State*, 6 Ohio St. Rep. 288; *Hollister* v. *Smith*, 9 Ohio St. Rep. 1.

3. It is objected, in the next place, that the plaintiff below should not have been permitted to show by his evidence, or to recover for, an indebtedness arising from goods of the plaintiffs sold on commission by the defendant, the action having been brought for goods sold and delivered by the plaintiff to the defendant. This objection seems to be purely technical. The petition states that "there is due to the plaintiff from the defendant, on the account for goods sold and delivered by the plaintiff to the defendant, a copy of which account is hereto attached, the sum of," etc., and then follows a specific statement of the items of the account. Quite a number of these items were for goods sold and delivered to the defendant, in the usual manner; others were for cash paid

for defendant for expenses of shipment, etc., while others were so stated as to apprise the defendant that they were for goods of the plaintiffs sold by defendant, and for the value of which he was liable to account to the plaintiff.   The indefinite preliminary statement as to the general character of the account is qualified and limited by the definite and specific statement of the several items.   The defendant could not, under the circumstances, be prejudiced by the general statement, which was not strictly descriptive of all the items. Besides, the referees found from the evidence that as to the goods sold on commission, the defendant had the absolute right, by the agreement of the parties, to sell the same in his own name, and for his own use, and that he was to account to the plaintiff " as a purchaser," and " as for goods sold and delivered."   The price for which he was to account to the plaintiff did not depend at all on the amount which the defendant would realize from the sales; and having agreed to assume all the liabilities of a purchaser, he has no right to complain that the petition treats him as such.   The technical rules of pleading, under the common law system, are abolished by the code, which only requires such a statement of the cause of action, in ordinary language, as being liberally construed, will fairly apprise the defendant of the precise cause of action.   The items in this case were all proper subjects of account, and that the defendant was fully apprised of the precise character of the plaintiff's claim is evident from his fifth defense.   Nothing remained to be done, under any special agreement, which the evidence tended to prove, except for the defendant to account, *as a purchaser*, and according to the price agreed upon, for the goods which he had received from the plaintiff and sold, and to make payment accordingly. We think this objection was properly overruled by the referees.

4. It is claimed, in the fourth place, that the referees erred in receiving evidence offered by the plaintiff to prove that improper charges were entered in the accounts rendered by the defendant from year to year.   This objection rests on the claim that these accounts so rendered became, by the acquiescence of the plaintiff therein, stated accounts, and that they

were finally settled by the parties in May, 1850, and the plaintiff's receipt in full given for the balance found due at that time.   If the record showed the facts to be as claimed by the defendant, then it would follow that the accounts thus settled could only be opened and corrected by a proceeding to surcharge and falsify, on account of errors and mistakes alleged and specifically pointed out.   But the report of the referees finds that certain items charged in the defendant's accounts, rendered from year to year, were objected to at the time, and never acquiesced in by the plaintiff; and that, in so far as the accounts were affected by these items, they never became stated accounts; that the defendant had notice, soon after the account was rendered into which these items first entered, of plaintiff's refusal to allow the same, and of its continued objection thereto, down to the time of the date of the receipt given by the plaintiff in 1850, and it was then agreed that the giving of said receipt should not operate to prevent the plaintiff from contesting the validity of the charges so disputed, or collecting the amount which would be due to the plaintiff on the accounts of the parties, if those charges should be found incorrect.   The evidence on which the referees so found is not fully shown by the record, nor does enough appear to enable us to say that their finding was not warranted by the evidence.

The referees found by their report, that the account rendered by Mayhew & Dudley, in 1839, exhibited a balance due to the plaintiff of $6172.10, and to this account no exception was taken by the plaintiff.   By the account rendered in 1840, this balance was credited to the plaintiff, but a deduction was made therefrom, of $15 per tun, on castings sold to Mayhew & Dudley, in 1837, and to this deduction the plaintiff objected soon after the rendition of the account.   This account exhibited a balance due the plaintiff of $6710.29.   This balance was not brought into the account rendered in 1841, which embraced only the transactions of the preceding year, and showed a small balance in favor of Dudley & Thompson.   In the account rendered in January, 1842, this last balance was charged to the plaintiff, and a credit given for the balance due

the plaintiff by the account rendered in 1840, but with a deduction therefrom of $3422, on account of debts alleged to be remaining unpaid, and arising from sales made by Dudley & Thompson, in 1838 and 1839.

After making this deduction from the plaintiff's credits, this account showed a balance in favor of Dudley & Thompson of $4191.10. But to this deduction or charge made on account of unproductive sales in 1838 and 1839, the plaintiff objected, and refused to allow the same, and gave the defendant notice thereof in May, 1842.

The first account rendered by the defendant alone, was on May 2, 1843, in which he brought forward, and charged in his own favor, the said balance of $4191.10; and to this balance so charged, the plaintiff objected; and then, or soon after, notified the defendant of its refusal to allow the same. Accounts were annually rendered thereafter, by the defendant till 1850, which were received and filed by the plaintiff's agent, without objection, except that, in so far as they were affected by this charge of $4191.10, the referees find that the objections thereto were never waived or withdrawn. The defendant, Dudley, was, during this time, a stockholder in plaintiff's company; and on the 22d of May, 1850, rendered his last account, showing a balance due to the plaintiff of $841, and, at the same date, sold to the plaintiff his stock, at the agreed price of $7000; of which $841 was applied in payment of his account as rendered; and the notes of the plaintiff were given for the residue. A receipt for the sum so applied was given to defendant, in the following terms: "Painesville, 22d May, 1850. Received of Thos. J. Dudley, eight hundred and forty-one dollars, on account, by the sale of his seven shares of stock to the company, and being the balance per account rendered up to this date." Signed, "P. P. Sanford, agent, Geauga Iron Company."

This receipt was certainly *prima facie* evidence of a full settlement of accounts, but it was open to explanation.

Evidence was offered by the parties (which is not before us), from which the referees found that this transaction did not take place, until the parties had agreed that the accounts

between them should still remain open, so far as respects the said balance of $4191.10, claimed by the defendant in his first account rendered May 3, 1843, as a balance due in closing the business of Dudley & Thompson.

The referees farther find by their report that said balance was improperly charged by the defendant, in his account in 1843, and was never assented to, or acquiesced in, by the plaintiff; and they therefore rejected this balance from defendant's credits. We must presume this finding of fact to be correct.

But the referees farther found and held that the plaintiff could not, in this action, be permitted to show any other errors or omissions in the accounts rendered by the defendants, from 1843 till 1850, because said accounts had, as to all other items, been received and filed without objection, and had thereby become accounts stated, which could not, in this action, be opened or impeached. Assuming the accounts rendered annually by the defendant, from 1843 till 1850, to be in all respects correct, except as to this balance of $4191.10, which was improperly charged in his first account, rendered January 23, 1843, the referees proceeded to state an account rejecting this charge alone, and intending, as their report shows, to free the subsequent accounts from the results of its improper introduction. In doing so, they made annual rests, according to the course of dealings between the parties, and found, by their computation, a balance due the plaintiff, March 25, 1850, after deducting the $841, paid by defendant by sale of stock, in May, 1850, of $9042.94. Computing interest on this sum at 6 per cent. per annum, from March 25, 1850, till February 8, 1858, they reported due to the plaintiff, at the latter date, the sum of $13,360.94. On exceptions to this computation, the plaintiff remitted, on account of errors apparent therein, the sum of $2980, and had judgment for the residue, including interest till May 17, 1858. Exception is taken to the amount for which judgment was rendered, and we think there is still manifest error in the computation. According to the finding and report of the referees, the defendant improperly charged in account to the plaintiff, on the 23d

January, 1843, the sum of $4191.10, and this is the only error to be corrected.

As to all other matters, the referees find that the defendant's accounts became stated accounts, from the acquiescence of the plaintiff therein.

The defendant took the benefit of this improper charge, with interest thereon from January 23, 1843, and with annual rests, till 1850. The aggregate of his credits arising from this false item, may be readily ascertained by computation.

If we compute interest on $4191.10, from January 23, 1843, till March 25, 1850, at 6 per cent. per annum, making rests, on the 25th of March, in each year, agreeably to the course of dealing between the parties, the principal and interest at the latter date, will be found to amount to the sum of $6361$\frac{23}{100}$, and if to this be added interest thereon at the same rate, but without rests till May 17, 1858, the first day of the judgment term, the sum of the whole is $9469$\frac{82}{100}$.

According to the facts found by the referees in their report, this is the amount for which judgment should have been rendered, and to this extent the judgment of the court of common pleas will be affirmed, and reversed as to the residue.

